# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME AVILA VELASQUEZ, ) | Case No. ED CV 10-0872 JCG |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, ) COMMISSIONER OF SOCIAL ) SECURITY ADMINISTRATION, ) | |
| Defendant. ) | |

## I.
## INTRODUCTION AND SUMMARY

On June 18, 2010, plaintiff Jaime Avila Velasquez ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of disability insurance benefits ("DIB"). [Docket No. 3.]

On December 15, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 13, 14.]

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that, as detailed below, the

Administrative Law Judge ("ALJ") improperly discounted Plaintiff's subjective complaints. The Court thus remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 46 years old on the date of his administrative hearing, has completed the third grade.[1] (*See* Administrative Record ("AR") at 32, 104, 147.)

On December 5, 2007, Plaintiff filed for DIB, alleging that he has been disabled since April 18, 2006 due to a cervical spine injury and posterior disc protrusions. (*See* AR at 59, 66, 104, 138, 142.)

On January 12, 2010, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (*See* AR at 32-56.) The ALJ also heard testimony from Martin G. Brodwin, Ph.D., a vocational expert ("VE"). (*Id.*; *see also id.* at 112.) An interpreter was present to assist Plaintiff at the hearing. (*See id.* at 32, 34-35.)

On February 25, 2010, the ALJ denied Plaintiff's request for benefits. (AR at 15-26.) Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. (*Id.* at 17.)

At step two, the ALJ found that Plaintiff suffers from severe impairments consisting of "degenerative disc disease of the lumbosacral spine," obesity, and diabetes mellitus. (AR at 18 (emphasis omitted).)

At step three, the ALJ determined that the evidence did not demonstrate that Plaintiff's impairments, either individually or in combination, meet or medically

---

[1] At the administrative hearing, Plaintiff testified that he has a second-grade education. (AR at 36.) However, in his disability report form, he indicated that he completed the third grade. (*Id.* at 141, 147.)

equaled the severity of any listing set forth in the Social Security regulations.[2/]  (AR at 18.)

The ALJ then assessed Plaintiff's residual functional capacity[3/] ("RFC") and determined that he can perform light work.  (AR at 19.)  Specifically, the ALJ found:

> [Plaintiff] is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours, and sit for six hours in an eight-hour workday with normal breaks. [Plaintiff] is able to operate foot controls no more than occasionally.  He is unable to climb ladders, ropes, or scaffolds.  He is otherwise able to perform postural activities (climb ramp/stairs, balance, stoop, kneel, crouch and crawl) occasionally.  He should not be exposed to hazards, such as heights, dangerous, moving machinery, etc.

(*Id.* (emphasis omitted).)

The ALJ found, at step four, that Plaintiff lacks the ability to perform his past relevant work.  (AR at 23.)

At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including product inspector, product packer, and product assembler.  (AR at 24-25 (emphasis omitted).)  Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act.  (*Id.* at 16, 25-26.)

---

[2/] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[3/] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 1-3, 6.) The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.
# ISSUES PRESENTED

Two disputed issues are presented for decision here:

1. whether the ALJ properly evaluated the medical evidence, (*see* Joint Stip. at 4-7); and

2. whether the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 13-16.)

Under the circumstances here, the Court finds the issue of the ALJ's evaluation of Plaintiff's credibility to be dispositive of this matter, and does not reach the remaining issue.

# V.
# DISCUSSION AND ANALYSIS

A.   Plaintiff's Credibility

Plaintiff argues that "the ALJ has provided a number of 'reasons' which he states are indicative of Plaintiff's lack of credibility. Unfortunately, these 'reasons' are misstatements of the evidence, or simply irrelevant in that they have nothing to do with Plaintiff's subjective pain complaints." (Joint Stip. at 13.)

1. The ALJ Must Provide "Clear and Convincing" Reasons For Discounting Plaintiff's Credibility

An ALJ can reject a plaintiff's subjective complaint upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering. (*See generally* AR at 15-26.) Therefore, the ALJ's reasons for rejecting Plaintiff's credibility must rest on clear and convincing reasons. *See Benton*, 331 F.3d at 1040.

### 2. The ALJ Improperly Rejected Plaintiff's Subjective Complaints

After a careful review of the medical record and the joint stipulation, the Court has considered the ALJ's reasons for finding Plaintiff not credible, and concludes that a remand is warranted on this issue. Five reasons guide this Court's determination.

First, the ALJ erred to the extent he rejected Plaintiff's credibility based on a lack of objective medical evidence. (*See* AR at 20 ("The objective medical evidence does not substantiate disability.").) Plaintiff provided sufficient medical evidence of an underlying impairment that was reasonably likely to cause the symptoms he described. For instance:

1. A treatment note, dated November 30, 2006, diagnosed Plaintiff with multiple lumbar disc protrusions with stenosis, cervicothoracic sprain/strain, and lumbar radiculopathy and provided work restrictions of "[n]o repetitive forward bending/stooping." (*Id.* at 202-205.)

2. An evaluating physician's summary report, dated February 7, 2008, indicated that an examination of Plaintiff's thoracic and lumbar spine found "[f]lexion [of] 30/90 degrees; extension [of] 10/30 degrees; [and] lateral bending [of] 10/25 degrees bilaterally." (*Id.* at 242-46.)

3. A San Bernardino County medical report, dated May 21, 2008, diagnosed Plaintiff with chronic low back pain. (*Id.* at 272.)

4. An MRI report, dated October 8, 2008, concluded that Plaintiff suffers from "mild degenerative disc disease and facet joint disease with secondary mild L5-S1 neural foraminal stenosis." (*Id.* at 273.)

5. A treatment note dated, February 25, 2009, reported that Plaintiff "still" complains of chronic low back pain and "lots of insomnia." (*Id.* at 293.)

6. A treatment note, dated June 11, 2009, described that Plaintiff's "[l]eft lower extremity straight leg raise elicits pain." (*Id.* at 302.)

Because Plaintiff produced sufficient medical evidence of an underlying impairment that is likely to cause back pain and other subjective symptoms, the ALJ erred to the extent he rejected Plaintiff's credibility based upon a lack of objective findings to support his allegations. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*) ("[O]nce the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); Social Security Ruling ("SSR") 96-7P,[4] 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

Second, the ALJ rejected Plaintiff's credibility based on his non-compliance with doctors' recommendations for him to quit smoking. (AR at 22.) This is not a valid reason to reject Plaintiff's credibility given that he is complaining of issues unrelated to his tobacco use – namely, pain due to neck and back impairments. 20 C.F.R. § 404.1530(a) (Agency regulations provide that a claimant must "follow treatment prescribed by your physician if this treatment can restore your ability to work."); *see Walters v. Astrue*, 2010 WL 1948254, at *15 (E.D. Cal. May 11, 2010)

---

[4] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

(ALJ's discounting of plaintiff's credibility due to continued smoking was invalid because plaintiff complained of issues unrelated to her tobacco use); *Shramek v. Apfel*, 226 F.3d 809, 812-13 (7th Cir. 2000) (overturning ALJ's adverse credibility assessment for claimant's purported failure to comply with the prescribed medical treatment for failing to quit smoking without a finding that claimant's ability to work would be restored if she quit smoking).

Third, the ALJ discounted Plaintiff's credibility because of "inconsistencies in [the] record." (AR at 22.) This reason is not supported by substantial evidence. For instance, the ALJ noted that Plaintiff "told [examining physician Bunsri T. Sophon, M.D. ("Dr. Sophon")] that conservative treatment had not been beneficial at all" despite evidence of improvement in "the progress notes and reports from [Plaintiff's] treating chiropractor." (*Id.*) However, even though Plaintiff's treating chiropractor did note improvements in Plaintiff's condition, Plaintiff's physical therapy progress reports illustrate that Plaintiff himself did not perceive improvement from treatment. (*See, e.g., id.* at 283 (physical therapy progress note, dated February 9, 2009, indicating that Plaintiff stated, "I feel therapy has made me worse"), 292 (physical therapy progress note dated February 13, 2009, indicating "[patient] reports minimal to no pain relief" from therapy).)

Further, while Plaintiff did report to his treating physician that after taking his pain medications, "his pain scale drops down to 3/10" *on April 29, 2009*, this was after Plaintiff complained that his previously-prescribed pain medication was not working, and around the time, he made various requests to change medication. (AR at 294.) On February 25, 2009, Plaintiff reported to his treating physician that he "wants to change meds," and on June 11, 2009, Plaintiff again stated, "he would like to change his [current pain medication] to Vicodin . . . because a member of his family was getting the Vicodin, and he tried 1 of their pills and felt that it gave him better relief." (*Id.* at 293, 301; *see also id.* at 305 (treatment note, dated June 18, 2009, prescribing Vicodin).) Accordingly, his statement to Dr. Sophon *on February*

8

*7, 2008* that he receives "no benefit at all from [physical therapy and pain medication,]" is supported by the record. (*Id.* at 242.)

Moreover, the Court fails to find the accounts Plaintiff provided to various physicians of how he injured himself at work to be inconsistent. The ALJ explained that Plaintiff "told Dr. Sophon that he had fallen and injured his low back at work. However, [Plaintiff] reported to [T. Dosumu-Johnson, M.D. ("Dr. Dosumu-Johnson")] the following: 'He was having an argument with the foreman when he blacked out. Apparently, he lost consciousness or fainted and dropped to the ground hitting his head and his low back.[']" (AR at 22.) While Plaintiff's account to Dr. Sophon does not elaborate on *why* he fell, the Court does not find his reports of how he injured his back to be contradictory. Plaintiff reported similar versions of his story with varying amounts of detail to a number of treatment providers. (*See id.* at 232, 242, 278, 301.)

Fourth, the Court disagrees with the ALJ's conclusion that Plaintiff "received rather routine treatment for his alleged symptoms." (AR at 21.) The ALJ noted that Plaintiff "reported that he was not even taking any medications" to Dr. Sophon, and found "nothing in the record that [Plaintiff] uses any devices to relieve pain, such as a back brace or a TENS unit." (*Id.*) The ALJ's conclusion is belied by the record. Plaintiff's medical record demonstrates that his treating physicians prescribed strong pain medications, including epidural steroid injections and Vicodin. (*See, e.g., id.* at 41, 257, 294, 302, 305, 306, 309, 310); *see Hung Thanh Le v. Astrue*, 2010 WL 1854081, at *6 (C.D. Cal. May 6, 2010) ("Vicodin qualifies as strong medication to alleviate pain.").

Further, at one point, Plaintiff explained to his treating physician that he was unable to receive any more epidural injections even though "he benefitted very much from those" because of "lack of insurance." (AR at 294); *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (claimant's failure to seek treatment due to inability to pay cannot support an adverse credibility termination). Moreover, contrary to the

9

ALJ's assertion, Dr. Dosumu-Johnson prescribed a "TENS unit," (AR at 237-38), although the record is unclear whether Plaintiff was able to afford or obtain one.

Fifth, the ALJ's discounting of Plaintiff's credibility because the "objective medical evidence does not substantiate the need for an assistive device" is not a clear and convincing reason here. (AR at 21); *cf. Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ offered clear and convincing reason for rejecting claimant's testimony of excess pain and fatigue as inconsistent with the medical record when claimant "had walked slowly and used a cane at the hearing, although none of his doctors had ever indicated that he used or needed to use an assistive device in order to walk" and ALJ noted that claimant was able to stand up "swiftly" and "without apparent discomfort" at the hearing).

There is no evidence that Plaintiff's physicians prescribed him with an assistive device or noted his use of a cane. However, the record does support Plaintiff's use of a cane. (*See* AR at 232 (Dr. Dosumu-Johnson noting that Plaintiff suffers from "difficulty walking"), 279 (treatment note, dated December 30, 2008, indicating that Plaintiff's has an "antalgic" gait),[5] 302 (treatment note, dated June 11, 2009, describing that "patient walks with a limp favoring his left lower extremity")); *see also Barrios v. Astrue*, 2009 WL 413128, at *3 (C.D. Cal. Feb. 17, 2009) (where there was evidence in the record that plaintiff walked with an "antalgic gait" and "the ALJ believed that plaintiff's credibility rested, at least in part, on whether a doctor had prescribed these devices, then the ALJ should have asked question(s) and/or sought documentation to determine whether her physician recommended or prescribed the use of such devices").

While the ALJ properly found the "lack of neurological deficits one would

---

[5] Antalgic gait refers to "a characteristic [gait] resulting from pain on weight-bearing in which the stance phase of [gait] is shortened on the affected side." *See Stedman's Medical Dictionary* 781 (28th ed. 2006).

10

expect if [Plaintiff] were truly as inactive as alleged," the Court is unconvinced that the ALJ's decision remains legally valid, despite the errors in the credibility analysis. (*See* AR at 22); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (affirming ALJ's rejection of claimant's excess pain testimony based, in part, on claimant's lack of muscular atrophy or any other physical signs of inactivity); *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (stating that the "relevant inquiry . . . is whether the ALJ's decision remains legally valid," despite errors in the credibility analysis).

## VI.
## **REMAND IS APPROPRIATE**

This Court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000), *cert. denied*, 531 U.S. 1038 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, there are outstanding issues which must be resolved before a final determination can be made. On remand, the ALJ shall reconsider Plaintiff's subjective complaints and the resulting functional limitations, and either credit Plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them. In addition, the ALJ shall reassess the medical opinions in the record and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions. If necessary, the

11

ALJ shall obtain additional information and clarification regarding Plaintiff's functional limitations.  Further, the ALJ shall then proceed through steps three through four and, with the assistance of a vocational expert, reassess his step five determination.[6]

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.

Dated: May 11, 2011

                                                Hon. Jay C. Gandhi
                                               United States Magistrate Judge

---

[6] In light of the Court's remand instructions, it is unnecessary for the Court to address Plaintiff's remaining contention. (*See* Joint Stip. at 4-7.)